Filed 10/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br>v.<br><br>STEPHEN MARTINEZ LOPEZ,<br><br>      Defendant and Appellant. | A158840<br><br>(Contra Costa County<br>Super. Ct. No. 50506287) |

Stephen Martinez Lopez was convicted in criminal court in 2009 for murder and related charges based on his actions as a minor.[1] In 2019, the trial court recalled defendant's sentence and resentenced him under Penal Code[2] section 1170, subdivision (d)(1) to correct the original sentence in light of an intervening 2015 California Supreme Court decision, *People v. Le* (2015) 61 Cal.4th 416. Prior to the resentencing, defendant moved to have a juvenile court hold a transfer hearing based on Proposition 57 (Prop. 57, as approved by voters, Gen. Elec. (Nov. 8, 2016) (Proposition 57)), which was enacted in 2016 and changed the law regarding prosecution of minors in adult court. The trial court denied the motion concluding that Proposition 57

---

[1] "We will use the terms 'adult court' and 'criminal court' interchangeably to refer to the court system for adults and juveniles who are tried as adults, and to distinguish that system from the juvenile court system, where most juvenile matters are handled." (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303, fn. 1 (*Lara*).)

[2] All further undesignated statutory citations are to the Penal Code.

1

did not apply to defendant, despite the resentencing, because his original sentence became final long before Proposition 57 took effect. We agree with defendant that this was error, so we will conditionally reverse the trial court's judgment and remand for a juvenile court to conduct a transfer hearing.

## BACKGROUND[3]

In 2009, defendant was tried in adult court and, after a jury trial, convicted of first degree murder (§ 187, subd. (a)), shooting at an inhabited dwelling (§ 246), three counts of assault with a semiautomatic firearm (§ 245, subd. (b)), and shooting from a motor vehicle (former § 12034, subd. (c), repealed by Stats. 2010, ch. 711, §§ 4, 10; see § 26100, subd. (c)). All the charges were accompanied by various enhancements. The charges arose from actions defendant committed in October 2003, when he was 17 years old. The trial court sentenced defendant to 60 years to life in prison on the murder count and a concurrent determinate term of 45 years on the assault counts, with sentences on the other counts stayed. Defendant appealed. A prior panel of this court struck a gang-benefit enhancement connected to the murder count, thereby removing 10 years from the indeterminate sentence, but otherwise affirmed the judgment.

In 2016, the electorate approved Proposition 57 to change the law regarding criminal prosecution of crimes committed by minors. (*Lara, supra,* 4 Cal.5th at p. 303.) Proposition 57 eliminated prosecutors' ability to directly file charges against minors in criminal court. (*Ibid.*) After Proposition 57, a juvenile court must first conduct a "transfer hearing" to determine whether a

---

[3] We recite only those facts necessary to resolve the procedural issue raised in this appeal. A full description of the factual background of this case can be found in our prior decision, *People v. Lopez* (Sept. 29, 2010, A115716) (nonpub. opn.).

2

matter should remain in juvenile court or be transferred to adult court before a prosecutor can try a minor in criminal court.  (*Ibid.*)  To make this determination, the juvenile court must consider various factors, including " 'the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated.' "  (*Id.* at p. 305.)

In August 2018, the Secretary of the California Department of Corrections and Rehabilitation recommended that the court reconsider defendant's sentence in light of *People v. Le*, *supra*, 61 Cal.4th 416.  The secretary's letter stated that it was intended to give the trial court authority

to resentence defendant under section 1170, subdivision (d).[4]  The trial court agreed that resentencing appeared to be appropriate and set the matter for a hearing.

Before the hearing, defendant moved to remand the case to juvenile court for a retroactive transfer hearing under *Lara*'s interpretation of Proposition 57.  (See *Lara, supra*, 4 Cal.5th at p. 310, 313.)  The trial court denied the motion, ruling that Proposition 57 was not intended to apply to a defendant whose case was already final, even if the defendant was later

---

[4] After the trial court's ruling below, the Legislature amended section 1170, subdivision (d)(1) in certain minor respects not relevant here.  (See Stats. 2020, ch. 29, § 14.)  For simplicity, we cite to the current version of section 1170, subdivision (d)(1).  That statute states in full:  "When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison or a county jail pursuant to subdivision (h) and has been committed to the custody of the secretary or the county correctional administrator, the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of state prison inmates, the county correctional administrator in the case of county jail inmates, or the district attorney of the county in which the defendant was sentenced, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence.  The court resentencing under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing.  The court resentencing under this paragraph may reduce a defendant's term of imprisonment and modify the judgment, including a judgment entered after a plea agreement, if it is in the interest of justice.  The court may consider postconviction factors, including, but not limited to, the inmate's disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice.  Credit shall be given for time served."

4

resentenced under section 1170, subdivision (d)(1).  The trial court then resentenced defendant to 50 years to life for the first degree murder conviction and enhancement and a concurrent 30-year term for the convictions for assault with a semi-automatic firearm and enhancements. The sentences on the remaining counts were stayed.

Defendant timely appealed.

## DISCUSSION

In *Lara*, the Supreme Court considered whether Proposition 57 applied retroactively.  (*Lara*, *supra*, 4 Cal.5th at p. 303.)  The Court had previously held in *In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*) that when the Legislature amends a criminal statute to lessen the punishment for a crime, it "is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final."  *Estrada* found this inference was "obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Id.* at p. 745.)  *Lara* applied the *Estrada* rule to hold that Proposition 57's transfer hearing provision "applies to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted." (*Lara*, at p. 304.)  Even though Proposition 57 did not ameliorate the possible punishment for any particular crime, *Lara* concluded the *Estrada* inference of retroactivity was applicable because Proposition 57 made minors eligible for disposition in

5

juvenile court, where the punishments for crimes are less severe and the goal is rehabilitation instead of punishment. (*Id.* at pp. 308–309.)

Although the judgment in his criminal case became final in 2010 after the decision by a prior panel of this court, defendant contends he is eligible for the benefits of Proposition 57 under *Lara*'s holding that Proposition 57 applies to any case that is not yet final. He argues that the trial court's decision to resentence him under section 1170, subdivision (d)(1) showed the original sentence was void and the trial court gave him a full resentencing or sentenced him anew. The People disagree, arguing that the trial court reopened defendant's case only for limited resentencing under section 1170, subdivision (d)(1), and *Estrada* retroactivity applies only to cases whose judgments are still subject to direct review. We review de novo this statutory interpretation issue regarding the intent behind Proposition 57. (*People v. Taylor* (1992) 6 Cal.App.4th 1084, 1090–1091.)

Two courts before us have reached divergent outcomes on issues similar to those defendant raises here, and the California Supreme Court has granted review in both matters. *People v. Padilla* (2020) 50 Cal.App.5th 244, 247, review granted Aug. 26, 2020, S263375 (*Padilla*), held that a defendant resentenced after a successful petition for a writ of habeas corpus after Proposition 57 became effective was entitled to a retroactive transfer hearing in juvenile court. One day later, *People v. Federico* (2020) 50 Cal.App.5th 318, 328, review granted Aug. 26, 2020, S263082 (*Federico*), held that a trial court properly denied a defendant's request for a retroactive juvenile transfer hearing when the defendant was resentenced under section 1170, subdivision (d)(1) after pleading guilty to charges based on conduct committed when he was 15. We examine each decision in turn.

6

In *Padilla*, the defendant was charged with murder and related charges stemming from a homicide he committed when he was 16 years old. (*Padilla, supra*, 50 Cal.App.5th at p. 248.) A juvenile court transferred the defendant's case to criminal court, where he was convicted and sentenced to a mandatory sentence of life without the possibility of parole. (*Ibid.*) In 2001, the California Supreme Court denied the defendant's petition for review, and defendant did not petition the Supreme Court for a writ of certiorari. (*Ibid.*) In 2014, the defendant filed a petition for writ of habeas corpus, asking the trial court to resentence him based on *Miller v. Alabama* (2012) 567 U.S. 460, 465. (*Ibid.*) The trial court agreed, vacated the defendant's sentence, and resentenced him to life in prison without the possibility of parole. (*Ibid.*) The defendant appealed and the Court of Appeal reversed the new sentence, remanding the matter to the trial court to consider another new Supreme Court decision, *Montgomery v. Louisiana* (2016) 577 U.S. __, 136 S.Ct. 718. (*Ibid.*) While the matter was pending in the trial court, the voters approved Proposition 57. (*Ibid.*) When the trial court again sentenced the defendant to life without the possibility of parole, the defendant appealed once more. (*Ibid.*)

*Padilla* first summarized Proposition 57 and noted that the transfer hearings required by Proposition 57 were more favorable to minors in certain ways than the transfer hearing originally held in the defendant's case. (*Padilla, supra*, 50 Cal.App.5th at pp. 248–250.) The court next discussed *Lara*'s application of the *Estrada* rule to Proposition 57. (*Id.* at pp. 250–251.) *Padilla* then reviewed the law regarding when a judgment is final for the purposes of retroactivity. (*Id.* at pp. 251–253.) Generally, the rule is that " ' "a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed." ' " (*Id.* at p. 252.) In *People*

7

*v. Jackson* (1967) 67 Cal.2d 96, 98–99 (*Jackson*), the California Supreme Court applied this principle to hold that a capital defendant who had obtained a new penalty-phase trial via a writ of habeas corpus could not use that retrial to challenge the finding of guilt based on Supreme Court authority issued after his original conviction became final. However, *Jackson* went on to hold that because the Supreme Court decisions were issued before the defendant's second penalty-phase trial, the defendant could use those decisions to challenge the trial court's re-imposition of the death penalty at the penalty retrial. (*Id.* at p. 100.) *Padilla* therefore summarized *Jackson* as establishing "that a collateral proceeding may reopen the finality of a sentence for retroactivity purposes, even while the conviction remains final." (*Padilla*, at p. 253.)

*Padilla* then turned to apply these principles to the case before it. It began by noting that the defendant's sentence was not final because the trial court had vacated the sentence imposed originally and the resentencing was still at issue in the appeal before it. (*Padilla*, *supra*, 50 Cal.App.5th at pp. 253–254.) It assumed the prosecution was correct that all matters not encompassed by the resentencing were still final, as the finding of guilt was in *Jackson*. (*Id.* at p. 254.) But *Padilla* concluded that the defendant's claim for a retroactive transfer hearing under Proposition 57 affected his resentencing, because a disposition in juvenile court would be more advantageous to the defendant than a criminal sentence for the same offense. (*Id.* at p. 254.) The court reasoned: "Because Proposition 57's primary ameliorative effect is on a juvenile offender's sentence, independent of the convictions, we conclude it applies retroactively to appellant's nonfinal sentence and requires that he receive a transfer hearing." (*Id.* at p. 255.) *Padilla* also observed that in a retroactive juvenile transfer hearing, the

8

juvenile court accepts the guilt finding from a defendant's criminal trial as a juvenile adjudication and only imposes an appropriate disposition. (*Ibid.*) *Padilla* finally rejected the People's argument that the voters who approved Proposition 57 did not likely intend for it to apply retroactively to defendants who were convicted as minors so long ago that retroactive application of Proposition 57 would result in their release from custody. (*Ibid.*) *Padilla* concluded this argument was contrary to *Lara*, which held based on *Estrada* that the voters intended Proposition 57 to apply as broadly as possible to any defendant whose judgment was not yet final. (*Id.* at pp. 255–256.)

Defendant urges us to follow *Padilla*, but the People would have us instead follow *Federico*. The defendant in *Federico* pled guilty in 2008 to assault with a firearm and enhancements and was sentenced to 20 years in prison. (*Federico, supra,* 50 Cal.App.5th at p. 322.) In September 2018, the secretary recommended under section 1170, subdivision (d)(1) that the trial court resentence the defendant for reasons not relevant here. (*Ibid.*) The defendant agreed to the resentencing and argued in addition that he was entitled to a transfer hearing under Proposition 57.[5] (*Ibid.*) The trial court denied the defendant's request, and the Court of Appeal affirmed. (*Id.* at pp. 321, 323.)

*Federico* held that *Lara* did not apply to the defendant because his conviction became final when the deadline to appeal the original sentencing

---

[5] The *Federico* defendant also sought to take advantage of a subsequent legislative amendment to Proposition 57, Senate Bill No. 1391 (2017–2018 Reg. Sess.). (*Federico, supra,* 50 Cal.App.5th at p. 321.) Because Senate Bill No. 1391 only benefits minors who were 14 or 15 years old at the time of their offense (*id.* at pp. 324–325) and defendant was 17 years old when he committed his offenses, Senate Bill No. 1391 it is not relevant here. For simplicity, our discussion of *Federico* therefore omits further mention of Senate Bill No. 1391.

passed. (*Federico, supra*, 50 Cal.App.5th at p. 325.) It rejected the defendant's argument that the resentencing hearing made the original judgment non-final, declaring that the fact that the defendant could appeal the resentencing decision did not render the original judgment not final. (*Id.* at pp. 325–326.)

Federico also concluded that section 1170, subdivision (d)(1) did not reopen the original judgment for the purposes of retroactively applying Proposition 57 because "even if a trial court has authority to recall a sentence under section 1170, subdivision (d), it does not follow that the sentence is not a final judgment under *Estrada.*" (*Federico, supra*, 50 Cal.App.5th at p. 326.) The court noted that section 1170, subdivision (d)(1) is an exception to the common law rule that a trial court loses jurisdiction to resentence a criminal defendant once execution of the sentence begins, and the statute says nothing about reopening a judgment in order to retroactively apply recently enacted laws. (*Id.* at pp. 326–327.) *Federico* reasoned that transferring a defendant for a juvenile transfer hearing would be inconsistent with the text of section 1170, subdivision (d), which "specifically provides that the court may '*resentence* the defendant in *the same manner* as if he or she had not previously been sentenced.' " (§ 1170, subd. (d)(1), italics added.)" (*Id.* at p. 327.) The court concluded the statute merely allowed the trial court to reconsider its sentencing choices in the original sentence. (*Ibid.*)

Federico finally rejected the defendant's argument that the full resentencing rule described in *People v. Buycks* (2018) 5 Cal.5th 857, 893–894 (*Buycks*), allowed the trial court to consider any relevant circumstances, such as the enactment of Proposition 57, that had occurred after the defendant was originally sentenced. (*Federico, supra*, 50 Cal.App.5th at p. 327.) The full resentencing rule dictates that "when part of a sentence is stricken on

10

review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*Buycks*, at p. 893.) *Buycks* analogized Proposition 47 resentencing to section 1170, subdivision (d)(1) resentencing and noted that the full resentencing rule has long been applied to the latter kind of resentencing to permit consideration of " 'any pertinent circumstances which have arisen since the prior sentence was imposed.' " (*Ibid.*) The *Federico* court nonetheless found *Buycks* irrelevant because the case before it did not involve resentencing under Proposition 47. (*Federico*, at p. 327.) *Federico* recited the examples of the full resentencing rule's application in *People v. Valenzuela* (2019) 7 Cal.5th 415, 425, which included the selection of a different principal term, reconsideration of whether to stay a sentence, imposition of an upper instead of a middle term, and imposition of concurrent or consecutive sentences. (*Federico*, at p. 328.) *Federico* found none of these examples expanded the scope of a resentencing court's discretion in the same way as ordering a transfer hearing. (*Ibid.*)

We disagree with *Federico* and find *Padilla* persuasive, even though the latter decision involved a resentencing following a successful petition for writ of habeas corpus rather than resentencing under section 1170, subdivision (d)(1). "In a criminal case, judgment is rendered when the trial court orally pronounces sentence." (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) Section 1170, subdivision (d)(1) authorized the trial court, based on the secretary's recommendation, to recall defendant's sentence and enter a new sentence. Because a resentencing under section 1170, subdivision (d)(1) replaces the original sentence, the original sentence is no longer operative, and the finality of the original sentence is no longer material. The only sentence that matters after resentencing under section 1170, subdivision

(d)(1) is the new sentence, which is not final because a resentenced defendant can still obtain review from the California Supreme Court or the United States Supreme Court. This statutory framework is thus comparable to the procedural posture in *Padilla*, where the trial court vacated the defendant's original sentence and entered a new sentence. (*Padilla, supra*, 50 Cal.App.5th at p. 253–254.) Contrary to *Federico*'s framing of the issue, it is not a question of whether the appealability of the new sentence makes the original judgment not final. (*Federico, supra*, 50 Cal.App.5th at p. 326.) Rather, the mere existence of the resentence makes the original sentence irrelevant for the purposes of *Lara*. Applying *Lara*'s conclusion that Proposition 57 applies retroactively to any judgment that is not final to defendant's new sentence, we conclude the new sentence is not final and so he is entitled to a retroactive transfer hearing in juvenile court.

The resentencing could alternatively be viewed as modifying the original judgment, but this leads to the same conclusion. The original sentence can no longer be considered final for *Estrada* purposes when it has been recalled and modified by the new sentence. *Federico* is correct that section 1170, subdivision (d)(1) does not describe this as " "reopening' " the judgment in so many words. (*Federico, supra*, 50 Cal.App.5th at p. 327.) But in substance it accomplishes the same thing, because the statute states that the "court resentencing under this paragraph may reduce a defendant's term of imprisonment and *modify the judgment*, including a judgment entered after a plea agreement, if it is in the interest of justice." (§ 1170(d)(1), italics added.) The original judgment can no longer be considered final for the purposes of section 1170, subdivision (d)(1) when the trial court has authority to and does modify it.

Unlike *Federico*, we do not view this conclusion as inconsistent with the text of section 1170, subdivision (d)(1). (*Federico, supra,* 50 Cal.App.5th at p. 327.) Besides allowing the resentencing court to "modify the judgment," section 1170, subdivision (d)(1) also instructs that the resentencing court should "resentence the defendant in the same manner as if they had not previously been sentenced." (§ 1170(d)(1).) This instruction does not mean, as *Federico* appears to have read it, that the resentencing court may only "reconsider its sentencing choices in the original sentence" without regard to any intervening changes in the law. (*Federico*, at p. 327.) Instead, the use of the phrase "as if [the defendant] had not previously been sentenced" means that the resentencing court should not consider itself bound by any aspect of the previous sentence. This reading is consistent with the rest of section 1170, subdivision (d)(1), which tells the resentencing court that it may consider events arising after the original conviction, such as the defendant's disciplinary history and record of rehabilitation in prison. (§ 1170(d)(1).) If *Federico* were correct that the phrase "in the same manner" signifies that a resentencing court should only reconsider its original sentencing choices (*Federico, supra,* 50 Cal.App.5th at p. 327), the Legislature would not have allowed the resentencing court to consider postconviction matters.[6]

This reading of section 1170, subdivision (d)(1) is also consistent with the full resentencing rule applicable under section 1170, subdivision (d)(1). As *Buycks* stated, this rule allows a court resentencing a defendant under section 1170, subdivision (d)(1) to "consider 'any pertinent circumstances which have arisen since the prior sentence was imposed.' " (*Buycks, supra,*

---

[6] The language authorizing a resentencing court to consider postconviction factors was added to the statute effective June 27, 2018. (Stats. 2018, ch. 36, § 17.)

5 Cal.5th at p. 893.) *Federico* is correct that neither *Buycks* nor the examples of this rule's operation in *People v. Valenzuela* involved a transfer hearing under Proposition 57. (*Federico*, *supra*, 50 Cal.App.5th at p. 328.) However, *People v. Ramirez* (2019) 35 Cal.App.5th 55, decided a year before *Federico*, applied the full resentencing rule in just this fashion. The Court of Appeal there had reversed the judgment and remanded the defendant's case to the trial court for resentencing and either a reduction of one count of conviction or a partial retrial. (*Id.* at p. 61 & fn. 1.) Proposition 57 was enacted following that remand, and the defendant successfully moved for a transfer hearing under Proposition 57 and *Lara*. (*Id.* at p. 59.) On appeal, the People argued the trial court's order for a transfer hearing exceeded the scope of its jurisdiction under the remittitur from the first appeal. (*Id.* at p. 64.) The Court of Appeal affirmed. It concluded that under the full resentencing rule, the remittitur gave the trial court "jurisdiction to consider any and all factors that would affect sentencing." (*Ibid.*) Because Proposition 57 entitled the defendant to a transfer hearing, "the trial court was *required* to consider the effect of Proposition 57 and issue any related orders." (*Ibid.*) Although *Ramirez* involved resentencing following an appeal, when a judgment is not final, its application of the full resentencing rule applies equally here because the same rule governs resentencing under section 1170, subdivision (d)(1). (*Buycks*, *supra*, 5 Cal.5th at p. 893.) The full resentencing rule therefore obligated the trial court here to give defendant a transfer hearing upon his resentencing.

Our conclusion is consistent with the California Supreme Court's decision in *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*). The defendant there appealed from an order revoking probation and imposing a previously-suspended imprisonment sentence. (*Id.* at pp. 43–44.) The court held the

14

defendant could take advantage of an ameliorative change in the law that occurred several years after his original conviction and grant of probation but while the order revoking probation was not yet final. (*Id.* at pp. 43, 45–46.) As relevant here, *McKenzie* found it irrelevant that the prior grant of probation was final in the sense that the defendant could have appealed from it, describing the order as having only " 'limited finality' "and " ' "not hav[ing] the effect of a judgment for other purposes." ' " (*Id.* at p. 47.) The court was also unpersuaded by the prosecution's reliance on the rule that defendants in probation revocation proceedings generally cannot raise errors committed earlier in the proceeding, because the defendant there could not have raised the change in the law any earlier in the process. (*Id.* at p. 50.)

*McKenzie* indicates that finality is not a binary concept and judgments can be final for some purposes but not others. We recognize that the law regarding probation is different from section 1170, subdivision (d)(1), but we view the section 1170, subdivision (d)(1) resentencing as having an analogous effect on defendant's sentence to the revocation of probation in *McKenzie*. Although not squarely on point, *McKenzie* shows the California Supreme Court's willingness to allow defendants to take advantage of ameliorative legislation that occurs after their first opportunity for post-conviction review. This demonstrates the continuing vitality of *Estrada*'s inference that ameliorative legislation is intended to lighten the punishment for as many defendants as possible rather than holding defendants to existing sentences out of vengeance. (*Estrada, supra*, 63 Cal.2d at p. 745.)

In addition to relying on *Federico,* the People raise various arguments in support of the trial court's ruling, none of which is persuasive. The People argue the California Supreme Court has considered the retroactivity of statutes only in cases where the defendants were pending trial or on their

first appeal, not when a defendant's judgment was final. The absence of a definitive precedent on point is of course no reason to deny defendant's request for a transfer hearing.[7] Moreover, the People define too narrowly the universe of relevant precedent. As *Padilla* pointed out, *Jackson* demonstrates that when a defendant's sentence is re-opened via a collateral attack, the defendant can take advantage of new decisions from the Supreme Court that are relevant to the collateral attack and were issued before the new sentence became final. (*Padilla, supra,* 50 Cal.App.5th at pp. 252–253.) The People provide no reason why we should not apply the same rule in the context of new statutory changes and a resentencing under section 1170, subdivision (d)(1).

The People further argue that if resentencing makes an entire judgment non-final for *Estrada* purposes, then a defendant who is resentenced after a change in the law creates a new affirmative defense to one of his or her charges would be entitled to a new trial on guilt at which he or she could raise the defense. The People contend this would stretch the *Estrada* rule to the breaking point. We need not address such hypothetical scenarios because they are not before us. However, we note that the reasoning in *Jackson* suggests that the People's premise is incorrect. Resentencing need not make an entire judgment non-final, because the guilt portion of a judgment may be treated as final even if the penalty or sentence is later re-opened. (*Jackson, supra,* 67 Cal.2d at p. 100.) That is the case here because, as *Padilla* concluded in similar circumstances, Proposition 57 implicates the sentencing phase of defendant's trial more than the guilt

---

[7] In any event, the People's desire for a definitive ruling on this question will likely be satisfied soon enough, because the California Supreme Court granted review in both *Padilla* and *Federico* to consider these issues.

16

phase. (*Padilla*, *supra*, 50 Cal.App.5th at p. 254 [Proposition 57 "affects [defendant's] *sentencing*, independent of its potential effect on his convictions"; noting that a juvenile disposition is more advantageous to a defendant than an adult criminal sentence for the same offense].) Although there are certainly procedural differences between juvenile and criminal court, the most salient difference is the different range of punishments available, as *Lara* concluded. (*Lara*, *supra*, 4 Cal.5th at p. 303 ["The possibility of being treated as a juvenile in juvenile court—where rehabilitation is the goal—rather than being tried and sentenced as an adult can result in dramatically different and more lenient treatment. Therefore, Proposition 57 reduces the possible punishment for . . . juveniles"].) Accordingly, extending the benefits of Proposition 57 to defendant here need not lead to the absurd results the People envision.

The People further contend *Padilla* was wrongly decided because the voters could have provided transfer hearings for defendants whose convictions were final, but there is no indication that they did so. The People contrast Proposition 57 in this regard with other statutory amendments that explicitly applied to defendants whose judgments were final or to those who have obtained collateral relief. The People contend this demonstrates the voters' intent to limit retroactive transfer hearings to defendants whose judgments were final. However, given that the voters did not address retroactivity at all in the text of Proposition 57 or its ballot materials (*Lara*, *supra*, 4 Cal.5th at p. 309), we decline to construe the voters' silence as indicating an intent to limit the reach of the act's reforms. Like *Lara*, we will instead heed the voters' intent that Proposition 57 be liberally construed to accomplish its purpose of emphasizing rehabilitation, especially for juveniles (*ibid.*), and apply it to those in defendant's position here.

17

The People finally argue on policy grounds that granting transfer hearings to individuals in defendant's position will create windfalls for those defendants who, due to fortuitous circumstances, are resentenced under section 1170, subdivision (d)(1), while others languish in prison without Proposition 57's benefit because there was no error in their original sentence that required resentencing. This argument could be restated as saying that because not every defendant will benefit from retroactive application of Proposition 57, no defendant should receive the benefit. On its face, this argument runs contrary to the electorate's stated intent that Proposition 57 " 'shall be liberally construed to effectuate its purposes,' " one of which is to " '[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles.' " (*Lara*, *supra*, 4 Cal.5th at p. 309.) Moreover, our Supreme Court has repeatedly rejected similar arguments made against the *Estrada* rule itself. (*McKenzie*, *supra*, 9 Cal.5th at p. 49.) It is true that defendants who plead guilty and whose judgments become immediately final do not get the benefit of subsequent changes in the law, while defendants who go to trial and appeal have the chance of such benefits. (*Ibid.*) Nonetheless, the Supreme Court has determined that the *Estrada* rule gives the retroactive benefit of ameliorative changes in the law to any defendant who is procedurally able to seek it. (*Ibid.*) We shall follow the Supreme Court's lead and do the same here.

## DISPOSITION

The judgment of the criminal court is conditionally reversed. The cause is remanded to the juvenile court with directions to conduct, no later than 90 days from the filing of the remittitur, a hearing to determine if it would have transferred the cause to adult criminal court had it originally been filed in juvenile court in accordance with current law. If the juvenile court

18

determines it would not have transferred the cause to criminal court under current law, it shall treat defendant's convictions as juvenile adjudications as of the date defendant was convicted and impose an appropriate disposition within its usual timeframe.  If the juvenile court determines it would have transferred appellant to adult criminal court, it shall transfer the case to criminal court, which shall then reinstate appellant's new sentence.

_____

BROWN, J.

WE CONCUR:

_____

POLLAK, P. J.

_____

STREETER, J.

*People v. Lopez* (A158840)

19

Trial Court:        Contra Costa County Superior Court

Trial Judge:        Hon. John W. Kennedy

Counsel:

Waldemar Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Seth K. Schalt, Bridget Billeter, Deputy Attorneys General for Plaintiff and Respondent.