# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

DOUGLAS EDWARD MCKENZIE,
Defendant and Appellant.

S251333

Fifth Appellate District
F073942

Madera County Superior Court
MCR047554, MCR047692 and MCR047982

February 27, 2020

Justice Chin authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Cuéllar, Kruger, and Groban concurred.

PEOPLE v. McKENZIE

S251333

Opinion of the Court by Chin, J.

We granted review in this case to decide whether a convicted defendant who is placed on probation after imposition of sentence is suspended, and who does not timely appeal from the order granting probation, may take advantage of ameliorative statutory amendments that take effect during a later appeal from a judgment revoking probation and imposing sentence. The Court of Appeal answered this question in the affirmative and, in light of a newly effective amendment to a sentence enhancement statute, ordered four of defendant Douglas McKenzie's sentence enhancements stricken. We affirm the Court of Appeal's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 2014, in three separate cases, defendant pleaded guilty to a number of drug-related offenses and, as here relevant, admitted having sustained four prior felony drug-related convictions for purposes of sentence enhancement under Health and Safety Code, former section 11370.2.[1] Under subdivision (c) of that statute, as it read at the time of defendant's plea, each prior conviction rendered defendant subject to a consecutive three-year prison term enhancement. As to all three cases, the trial court suspended imposition of

---

[1] All further unlabeled statutory references are to the Health and Safety Code.

1

sentence, granted defendant five years' probation, and ordered him to attend drug court.

In March 2016, the Madera County Probation Department sought revocation of defendant's probation based on alleged probation violations. Defendant admitted the violations and, on June 1, 2016, the trial court revoked probation, declined to reinstate it, and imposed a prison sentence that included four three-year prior drug conviction enhancements under former section 11370.2, subdivision (c).

About two weeks later, defendant filed a notice of appeal. On September 13, 2017, the Court of Appeal filed an opinion modifying the judgment in certain respects and otherwise affirming.

On October 11, 2017, the governor signed Senate Bill No. 180 (2017-2018 Reg. Sess.), which was to take effect January 1, 2018. Under section 11370.2, as revised by that bill, defendant's prior drug-related convictions no longer qualified defendant for sentence enhancement.

On October 20, 2017, defendant petitioned this court for review based on the enactment of Senate Bill No. 180 (2017-2018 Reg. Sess.). On December 20, 2017, we granted review and remanded the case to the Court of Appeal with directions to vacate its decision and to reconsider the matter in light of the revised statute. On January 1, 2018, Senate Bill No. 180 took effect. On remand, the Court of Appeal held that defendant could take advantage of the revisions to section 11370.2 that rendered the statute's sentence enhancements inapplicable to his prior drug-related convictions, and the court ordered those four enhancements stricken.

We then granted the People's petition for review.

## II. DISCUSSION

We begin with *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), which first set forth the current rule regarding retroactive application of ameliorative statutory amendments and which is the foundation of the People's argument. In that case, between the defendant's escape from a drug rehabilitation center and his guilty plea to the crime of escape, statutory amendments took effect that reduced "both the term of imprisonment [for his crime] and the time necessary to spend in prison to be eligible for parole." (*Id.* at p. 744.) We held that the ameliorative changes applied to the defendant, explaining: "The key date is the date of final judgment. If the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then . . . . it, and not the old statute in effect when the prohibited act was committed, applies." (*Ibid.*)

This conclusion, we reasoned in *Estrada*, was warranted by factors indicating that, consistent with the common law rule, the Legislature must have intended the amendatory statute to apply in "all prosecutions not reduced to final judgment" at the time of its passage. (*Estrada*, *supra*, 63 Cal.2d at p. 747.) "[O]f paramount importance," we explained, was the following consideration: "When the Legislature amends a statute so as to lessen the punishment[,] it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied

3

constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology. . . . [¶] . . . 'A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance.' " (*Id.* at pp. 744-745.)

*Estrada* involved statutory amendments that "merely reduced . . . penal sanctions" for a given act, but we subsequently applied it to amendments that "entirely eliminated" such sanctions. (*People v. Rossi* (1976) 18 Cal.3d 295, 301 (*Rossi*).) "[T]he common law principles" underlying the *Estrada* rule, we reasoned, "apply a fortiorari when criminal sanctions have been completely repealed before a criminal conviction becomes final." (*Ibid.*) As we explained, "it would be untenable to give defendants the benefit of a reduction in punishment while denying them the benefit of a complete remission of punishment." (*People v. Collins* (1978) 21 Cal.3d 208, 213 (*Collins*).) Such a rule "would clearly lead to absurd results." (*Rossi*, at p. 302, fn. 8.) It would enable a defendant to benefit from a statutory change if the amendment "simply . . . reduce[s] the maximum punishment" for a given act — even "to one day in jail" — but would "subject[]" a defendant "to the full punishment [formerly] prescribed" if the amendment instead "completely repeal[s] all criminal penalties for" the act. (*Ibid.*)

"[S]uch a reading of legislative intent belies reality." (*Ibid.*) Thus, " 'when the [L]egislature repeals a criminal statute or otherwise removes the State's condemnation from conduct that was formerly deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct. The rule applies to any such proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it.' " (*Id.* at p. 304.)

The record here shows that when the revisions to section 11370.2 took effect, defendant's " 'criminal proceeding . . . ha[d] not yet reached final disposition in the highest court authorized to review it.' " (*Rossi, supra*, 18 Cal.3d at p. 304, quoting *Bell v. Maryland* (1964) 378 U.S. 226, 230.) On that date, "the time for petitioning for a writ of certiorari in the United States Supreme Court [had not] passed" (*People v. Nasalga* (1996) 12 Cal.4th 784, 789, fn. 5); as earlier set forth, the governor signed the bill containing the revisions before defendant even petitioned *this* court for review of the judgment imposing a prison sentence, and when the bill took effect on January 1, 2018, defendant's appeal of his sentence was pending in the Court of Appeal pursuant to our December 2017 order granting review and remanding the case for reconsideration in light of the revisions. Thus, the prosecution had not been "reduced to final judgment at the time" the revisions took effect. (*Estrada, supra*, 63 Cal.2d at p. 746.)

In asserting that defendant is nevertheless precluded from obtaining relief, the People argue as follows: The relevant cut-off point under *Estrada* for applying ameliorative amendments is the date the "judgment of conviction becomes final." (*Estrada, supra*, 63 Cal.2d at p. 744.) Penal Code section 1237, subdivision (a), provides in relevant part that a defendant may

appeal "from a final judgment of conviction" and that "an order granting probation . . . shall be deemed to be a final judgment within the meaning of this section." Under this section, the People assert, the *original* 2014 order granting defendant probation was "a final judgment for purposes of filing an appeal," and that judgment — which included defendant's "underlying conviction" and "the admissions to prior convictions that qualified [him] for enhanced sentencing" — became "final for *Estrada* purposes . . . when the time to appeal from the . . . order passed, well before the Legislature amended the enhancement statute." Defendant therefore is not entitled to "retroactive application" of the statutory revisions.

The People's arguments fail under our precedents. Initially, the People err by assuming that when we used the phrase "judgment of conviction" in *Estrada*, *supra*, 63 Cal.2d at page 744, we were referring only to "underlying" convictions and enhancement findings, exclusive of sentence. In criminal actions, the terms "judgment" and " 'sentence' " are generally considered "synonymous" (*People v. Spencer* (1969) 71 Cal.2d 933, 935, fn. 1), and there is no "judgment of conviction" without a sentence (*In re Phillips* (1941) 17 Cal.2d 55, 58). Moreover, in *Estrada*, we also referred to the cut-off point for application of ameliorative amendments as the date when the "case[]" (*id.* at p. 746) or "prosecution[]" is "reduced to final judgment" (*id.* at p. 747). And in *Rossi*, *supra*, 18 Cal.3d at page 304, we stated that an amendatory statute applies in " 'any [criminal] *proceeding* [that], at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it.' " (Italics added.) It cannot be said that this criminal prosecution or proceeding concluded before the ameliorative legislation took effect.

This conclusion is also consistent with our recent decision in *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*). In that case, four years after successfully completing probation, the defendant asked the trial court to dismiss his action and expunge his record in furtherance of justice under Penal Code section 1385. (*Chavez*, at p. 776.) We concluded that the trial court could not dismiss the action under that statute because there was no longer an action to dismiss: the criminal action had ended when the defendant's probation had expired. (*Id.* at p. 777.)

In the course of so holding, we noted that "[u]nder well-established case law, a court may exercise its dismissal power under [Penal Code] section 1385 at any time before judgment is pronounced — but not after judgment is final." (*Chavez, supra,* 4 Cal.5th at p. 777.) At the same time, however, we expressly rejected the argument that in such cases, the "criminal action terminates" when "the court orders a grant of probation." (*Id.* at p. 785.) We therefore concluded that Penal Code section 1385's dismissal "power may be exercised until judgment is pronounced or when the power to pronounce judgment runs out." (*Chavez*, at p. 777.) As particularly relevant here, we explained that the "criminal action" — and thus the trial court's jurisdiction to impose a final judgment — "continues into and throughout the period of probation" and expires only "when th[e] [probation] period ends." (*Id.* at p. 784.) *Chavez* thus confirms that a criminal proceeding ends only once probation ends if no judgment has issued in the case.

Notably, in reaching this conclusion, we also found it irrelevant that "under [Penal Code] section 1237, an order granting probation is deemed a 'final judgment' for the purpose of taking an appeal." (*Chavez, supra,* 4 Cal.5th at p. 786.) Under

our precedents, we explained, "such an order" has only "limited finality" and " 'does not have the effect of a judgment for other purposes.' " (*Ibid.*) Based on these precedents, we declined to find that, by virtue of Penal Code section 1237, an order granting probation is a final judgment for purposes of construing a trial courts' dismissal power under Penal Code section 1385. (*Chavez*, at p. 786.)

In this regard, *Chavez* is consistent with prior decisions in which we stated that under Penal Code section 1237, an order granting probation "is 'deemed to be a final judgment' for the limited purpose of taking an appeal therefrom" and "does not have the effect of a judgment for other purposes." (*People v. Superior Court (Giron)* (1974) 11 Cal.3d 793, 796; see *People v. Flores* (1974) 12 Cal.3d 85, 94, fn. omitted [order granting probation "is not to be deemed a judgment except for purposes of appeal as provided in [Penal Code] section 1237"].) By providing that an order granting probation is "deemed to be a final judgment within the meaning of this section," Penal Code section 1237, subdivision (a), merely "mak[es]" the order "appealable" and "mak[es] the scope of review the same *as though* the appeal were taken from a final judgment of conviction." (*In re Osslo* (1958) 51 Cal.2d 371, 380, italics added.) This clause was added to Penal Code section 1237 in 1951 for the "limited" purpose of "exten[ding] . . . a defendant's right to appeal from a theretofore nonappealable order." (*People v. Robinson* (1954) 43 Cal.2d 143, 145.) We long ago observed that the clause may "not preclude [a] court from recognizing that for purposes other than those of Penal Code section 1237 there is a substantial and . . . pertinent difference between an order granting probation and a final judgment as such." (*In re Osslo*, at p. 380.) "To hold otherwise would give the 1951 amendment

greater scope than its language would reasonably support." (*Robinson*, at p. 145.)

Based on the preceding analysis, we reject the People's argument that, by virtue of Penal Code section 1237, because defendant failed to appeal from the order granting probation he may not benefit from ameliorative amendments that took effect long after the time for taking an appeal from that order lapsed.

This reading of *Estrada* is consistent with the "consideration of paramount importance" we identified in that decision: the "inevitable inference" that the Legislature, having "determined that its former penalty was too severe," "must have intended" that the ameliorative statutory change "should apply to every case to which it constitutionally could apply." (*Estrada*, *supra*, 63 Cal.2d at pp. 744-745.) A contrary conclusion, we explained, would " 'serve no purpose other than to satisfy a desire for vengeance,' " and would have to rest on the impermissible view "that the Legislature was motivated by [such] a desire." (*Id.* at p. 745.) Here, the People offer no basis for concluding that the revisions to section 11370.2 may not "be applied constitutionally" to defendant. (*Estrada*, at p. 745) Thus, applying those revisions in this case is fully consistent with *Estrada*.

The People instead offer several policy bases for their view. They assert that precluding probationers like defendant from taking advantage of ameliorative statutory revisions that become effective after expiration of the time for direct appeal from an order granting probation would be "consistent with the public's interest in finality, an interest that the Legislature would not intend to implicitly undercut by reducing a penalty." Finality is important, the People argue, because it (1) "prevents

criminals from escaping prosecution" due to destruction of evidence and loss of witnesses over the years, (2) "conserves public resources" by eliminating potential retrials and the need "to preserve evidence during the period of probation," and (3) "encourage[s]" probationers "to accept responsibility" for their actions and to "focus on rehabilitation." By contrast, the People contend, applying such revisions under these circumstances would produce "absurd results." It would "mean" that probationers "who do[] not initially challenge [their] underlying conviction" and "successfully complete[]" probation are worse off than probationers who violate their probation terms, have probation revoked, and appeal from that revocation, because only the latter may "benefit from a subsequent amendment to the pertinent statute." It would thus " 'encourag[e] defendants to violate the terms of their probation in the hopes of extending the probation term to take advantage of any beneficial changes in the law during the probationary period.' " This, in turn, might make trial courts "reluctant to extend probation and give defendants additional opportunities to achieve rehabilitation."

We rejected similar arguments in *Estrada* when we adopted the existing rule and disapproved a previous decision holding that "the punishment in effect when the act was committed" applies notwithstanding a subsequently enacted ameliorative revision. (*Estrada, supra,* 63 Cal.2d at p. 742.) The previous decision was based in part on the view that failing to apply a law "with certainty as it read on the date of the offense" would diminish the law's "intended deterrent effect." (*People v. Harmon* (1960) 54 Cal.2d 9, 26.) The dissent in *Estrada* echoed this view, arguing that allowing defendants to take advantage of ameliorative revisions as long as direct appeal is still available would "substantially reduce[]" the "deterrent[]" effect

that comes with "[t]he certainty of punishment." (*Estrada, supra*, 63 Cal.2d at p. 753 (dis. opn. of Burke, J.).) It would also, the *Estrada* dissent asserted, give "those contemplating and subsequently committing crime" incentive to "seek[] every avenue of delay through appeals and legal maneuvers of all kinds" in the hope that "the Legislature might in the meantime reduce the punishment." (*Ibid.*) In other words, it would "encourag[e] appeals and delays not related to guilt or innocence but employed solely to keep open the possibility of subsequent windfalls" through application of "an ameliorating legislative act." (*Ibid.*) Finally, it would create "a gross inequity" and "unequal treatment under the law" as to defendants who "plead[] guilty to an offense" and whose "conviction[s] promptly become[] final, thereby effectively shutting the door to [their] ever receiving any benefit" from the ameliorative revision. (*Ibid.*) These policy arguments did not persuade us in *Estrada* not to apply ameliorative revisions to defendants who have already committed criminal acts *if* the revisions take effect *before* their "cases" are "reduced to final judgment." (*Id.*, at p. 746.) The People's similar arguments are no more persuasive today, more than 50 years later, in the context of determining whether *Estrada*'s rule includes defendants who are, when ameliorative statutory revisions take effect, appealing from a judgment entered upon revocation of probation. Indeed, we find it highly doubtful that a probationer would, as the People suggest, violate probation — and face probation revocation and imprisonment — simply in the hope that (1) the court would extend probation notwithstanding the violation, *and* (2) the

Legislature would enact some ameliorative statute during the extended probationary term.[2]

Nor are we persuaded by the People's argument that probationers who do not file a timely appeal from an order granting probation "cannot challenge the order or the underlying determination of guilt through a later appeal." The legal principle associated with this argument provides that when a court suspends imposition of sentence and grants probation, the defendant's failure to appeal from the order granting probation generally "estops" the defendant "from claiming error *with respect to matters occurring before that order*," but not as to "proceedings in connection with the revocation of probation and sentencing." (*People v. Gonzales* (1968) 68 Cal.2d 467, 470, italics added.) In other words, it "merely forecloses action based on errors committed at the trial." (*People v. Wilkins* (1959) 169 Cal.App.2d 27, 34.) Here, defendant does not claim that an "error[]" occurred "at the trial" (*ibid.*) "before" the court ordered probation (*Gonzales*, at p. 470). Instead, he raises an issue relating to the subsequent "revocation of probation and sentencing" (*ibid.*), based on an event — the amendment of section 11370.2 — that occurred long after the court ordered probation *and* the time for direct appeal lapsed. Thus, defendant *could not* have raised this issue during a direct appeal from the probation order. Under these

---

[2] We also note that as a factual matter, applying the *Estrada* rule in this case does not implicate the People's concerns about the costs and difficulties associated with retrials. Allowing defendant to take advantage of the revision to section 11370.2 will not result in a new trial. The trial court may simply strike the affected enhancements and modify defendant's sentence accordingly.

circumstances, defendant's failure to file such a direct appeal does not preclude him from taking advantage of ameliorative amendments that took effect while he was appealing from the subsequent revocation of his probation and imposition of sentence. (Cf. *In re Black* (1967) 66 Cal.2d 881, 887 ["It has been said that the 'requirement of exhaustion of the appellate or other remedy . . . is merely a discretionary policy governing the exercise of the reviewing court's jurisdiction to issue the writ' "].)

The People's contrary view rests on an asserted distinction — between amendments that merely reduce punishment and those that entirely eliminate punishment — that, as already explained, we long ago rejected for purposes of applying the *Estrada* rule. The People argue that "because" the statutory amendment here "did not [merely] change the sentence or the superior court's sentencing discretion as to the former enhancements, it did away with them altogether," this case necessarily involves a prohibited "challenge to the [now final] adjudication of defendant's guilt — specifically, the adjudication of the allegations of prior narcotics-related convictions" — rather than a question of "sentencing discretion." In other words, in the People's view, although defendant could have benefitted from the amendment had it merely reduced the punishment for the enhancement — even to a single day in jail — because the amendment completely eliminated the punishment, he cannot. As we explained over 40 years ago, as a basis for determining the *Estrada* rule's applicability, the distinction the People put forth is "untenable" (*Collins*, *supra*, 21 Cal.3d at p. 213) and "would clearly lead to absurd results" (*Rossi*, *supra*, 18 Cal.3d at p. 302, fn. 8). Therefore, we again decline to adopt it.

Finally, rejection of the People's argument is consistent with our discussion in *Estrada* and subsequent decisions of "legislative intent," i.e., whether "the Legislature intend[ed] the old or new statute to apply." (*Estrada*, *supra*, 62 Cal.2d at p. 744.) We find no basis to conclude that the Legislature intended the old statute imposing punishment to apply to those on probation simply because they may no longer appeal from orders granting probation as to which there was no ground for appeal. On the other hand, as we have explained, "an amendment eliminating criminal sanctions is [itself] a sufficient declaration of the Legislature's intent to bar all punishment for the conduct so decriminalized." (*Collins*, *supra*, 21 Cal.3d at p. 213.)

In addition to these generally applicable statements regarding legislative intent, the legislative history of section 11370.2's recent revision reveals additional "factors that indicate the Legislature must have intended that the amendatory statute should operate in" cases like this one. (*Estrada*, *supra*, 63 Cal.2d at p. 746.) According to that legislative history, the "sentence enhancement for prior drug convictions" was an "extreme punishment" that had "failed to" achieve its goals — "protect[ing] communities [and] reduc[ing] the availability of drugs" — while having the following negative effects: (1) producing "overcrowded jails and prisons"; (2) " 'funneling money away from community-based programs and services' " in order to " 'build[] new jails to imprison more people with long sentences,' " thus "crippl[ing] state and local budgets"; and (3) " 'devastat[ing] low-income communities of color' " and " 'target[ing] the poorest and most marginalized people in our communities.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 180 (2017-2018 Reg. Sess.) June 27, 2017, p. 4.) Repeal of the enhancement was therefore " 'urgently needed' " in order

14

" 'to undo the damage' " the enhancement had caused, to "free[]" up funds for "reinvest[ment] in community programs that actually improve the quality of life and reduce crime," and to " 'reduce racial disparities in the criminal justice system.' " (*Ibid.*)  In view of these stated concerns and goals, we see no basis to conclude the Legislature intended to exclude those on probation simply because they can no longer appeal from the original order granting probation.  The legislative history reinforces the conclusion that the Legislature "must have intended" section 11370.2's ameliorative changes to "operate in" cases like this one.  (*Estrada*, *supra*, 63 Cal.2d at p. 746.)

### III.  DISPOSITION

For the reasons set forth above, we affirm the judgment of the Court of Appeal.

**CHIN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. McKenzie

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 25 Cal.App.5th 1207
**Rehearing Granted**


_____

**Opinion No.** S251333
**Date Filed:** February 27, 2020

_____

**Court:** Superior
**County:** Madera
**Judge:** Ernest J. LiCalsi


_____

**Counsel:**

Elizabeth Campbell, under appointment by the Supreme Court, and Alex Green, under appointment by the the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, R. Todd Marshall, Raymond L. Brosterhous II, Eric L. Christoffersen, Janet Neeley, Rachelle A. Newcomb and Catherine Chatman, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Catherine Chatman
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
(916) 210-7699

Elizabeth Campbell
Attorney at Law
3104 O Street
Sacramento, CA 95816
(530) 786-4108