Filed 2/5/21  P. v. Sapienza CA4/2
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY EDWARD SAPIENZA,<br><br>    Defendant and Appellant. | E070547<br><br>(Super.Ct.No. SWF1500341)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Elaine M. Kiefer, Judge.

Reversed and remanded.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and

Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief

Assistant Attorneys General, Julie L. Garland, Assistant Attorney General, and Steve

Oetting, Meredith S. White and Daniel Hilton, Deputy Attorneys General, for Plaintiff

and Respondent.

1

On August 31, 2015, pursuant to a plea agreement, defendant and appellant Jeffrey Edward Sapienza pled guilty to criminal threats.  (Pen. Code, § 422, count 2.)[1]  The court imposed the upper term of three years of imprisonment, but it suspended execution of sentence and placed defendant on three years of formal probation from which defendant did not appeal.  On January 5, 2018, the trial court found defendant in violation of his probation.  On March 23, 2018, the court imposed the three-year suspended sentence and awarded defendant 903 days of custody credits.

On appeal, defendant contended the matter should be conditionally reversed and remanded to the trial court to determine, retroactively, whether he qualified for a pretrial diversion program for individuals diagnosed with qualifying mental disorders pursuant to then-recently enacted section 1001.36.  (Stats. 2018, ch. 35, § 24.)  The People responded, in part, that even if section 1001.36 could be applied retroactively, defendant's judgment was already final and, thus, defendant was ineligible for consideration for section 1001.36 diversion.

In a published opinion dated August 23, 2019, we affirmed, holding that defendant's judgment was final when the time for filing an appeal from the court's order imposing but suspending execution of sentence on August 31, 2015, had expired.  Thus, because any purported retroactivity of section 1001.36 would have extended only to nonfinal judgments, defendant was not entitled to have his matter evaluated for pretrial diversion.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

Since that decision, the court in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), found that section 1001.36 "applies retroactively to cases in which the judgment is not yet final . . . ." (*Id*. at p. 845; see *id*. at pp. 850-854.)  By order dated May 27, 2020, the California Supreme Court directed us to vacate our opinion and reconsider the cause in light of *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*).  (*People v. Sapienza* (May 27, 2020, S258252) ___ Cal.5th ___ [2020 Cal. Lexis 3504].)

In his supplemental briefs on remand, defendant contends that the holding in *McKenzie* requires that we remand the matter to the trial court to conduct a mental health diversion eligibility hearing pursuant to section 1001.36.  In their supplemental briefs, the People maintain the *McKenzie* decision has no impact upon this case because, unlike this case, there was no final judgment in *McKenzie*.  We conditionally reverse the judgment and remand the matter to the trial court.

## I.  FACTUAL AND PROCEDURAL HISTORY

In January 2015, the victim drove into his mobilehome park, where defendant waved him down.  The victim rolled down his window and asked if he could help defendant.  Defendant said the victim was not a man of his word; defendant said something about the victim owing defendant $20.  The victim assumed defendant was talking about $20 that defendant's mother had lent the victim.

The victim exited his car.  Defendant yelled:  "'Give me your money or I'm gonna get it from you.'"  Defendant quickly approached the victim and touched his nose to the victim's nose and his chest to the victim's chest.  Defendant told the victim to give him

the money or he was going to hurt and kill the victim. The victim was afraid of defendant.

The victim told defendant he had already paid the money back to defendant's mother. Defendant pointed out a car nearby and said: "'You see the [B]lack guy there inside the car? All I have to do is call him, and he'll do it for me.'" The victim "really got very scared." He interpreted defendant's words as a threat to have the man kill him.

The victim told defendant he was going to call the mobilehome manager and the police. Defendant told him: "'Go ahead.'" The victim got into his car and drove off. He did not return home because he was afraid of alerting the man with whom defendant had threatened him with as to the location of his residence. Instead, the victim parked, went to the manager's office, and told her what had occurred. The manager then called the police.

The victim testified that two nights prior to the incident, he found defendant parked in front of his home at 2:00 a.m. The victim was worried because he had been burglarized on several occasions. In May 2016, the victim called the police because defendant contacted him; the victim had a restraining order against defendant.[2]

The People charged defendant by second amended felony complaint with attempted robbery (§§ 664, 211, count 1), two counts of criminal threats (§ 422, counts 2 & 4), misdemeanor elder abuse (§ 368, subd. (c), count 3), and failure to appear

---

[2] At this point, the court recessed the preliminary hearing. Upon return from the recess, defendant entered his plea.

4

(§ 1320.5, count 5). The People additionally alleged defendant had committed the charged offenses while defendant had been released from custody. (§ 12022.1.)

The People and defendant apparently came to a resolution which involved the instant case, four misdemeanor cases, and an admission to a violation of probation. In the instant case, defendant pled guilty to criminal threats (§ 422, count 2) with the understanding defendant would be sentenced to jail for 365 days with credit for 121 days.

The People agreed that defendant "could be accepted into an appropriate dual diagnosis residential treatment program . . . ." Defendant would be required to provide proof that the program had accepted him; if admitted to a rehabilitation program, the court would modify the sentence, release defendant to the program, and allow him to spend the balance of his jail time in the program. The court imposed the upper term of three years, execution of which the court suspended on the condition that defendant successfully complete the terms and conditions of three years of formal, felony probation.

At a hearing on September 24, 2015, the parties confirmed that defendant had been admitted to a rehabilitation program. Upon defendant's agreement, the court ordered defendant released from jail the next day to complete the balance of his custody time in the residential treatment program. The court noted, "I'm going to give you the opportunity to get clean and sober."

On April 5, 2016, the People filed a misdemeanor complaint and petition for revocation of defendant's probation alleging he had resisted arrest. (§ 148, subd. (a)(1).) At a hearing on May 24, the court observed: "I . . . have this document he's in inpatient

5

care at Pacific Grove Hospital." Defendant's attorney stated defendant was "on a psychiatric hold."[3] The court noted that the letter indicated defendant would not be released from the hospital until June 3; defense counsel confirmed this. The court issued a bench warrant, but held it until the second week of June, ordering defendant to appear on June 9.

On June 9, 2016, the People informed the court that they had obtained a letter reflecting defendant had been admitted to a hospital the day before, with an undetermined release date. Defense counsel stated the reason for the hospitalization "seems to be possibly schizophrenia, for all I know."[4] The court continued the matter and held the warrant until June 21.

On July 13,[5] August 8, October 23, November 1, and December 18, 2017, the court continued the matter. On January 5, 2018, the court held a hearing on the petition to revoke defendant's probation.

A police officer testified that on March 31, 2016, he responded to a call regarding "a male acting strangely and being aggressive and loud at the bank." When he arrived, he

---

[3] The letter to which the court referred does not reflect that the hospital was a psychiatric hospital and does not indicate why defendant had been admitted, only that he had been admitted to the hospital.

[4] Again, the letter from the hospital does not reflect that it was a psychiatric hospital or that defendant was admitted for any psychiatric condition.

[5] There is nothing in the record to explain the more than one-year gap between the last continuance and that issued on July 13, 2017.

encountered defendant, who was pacing back and forth in front of the bank yelling. Defendant did not appear to have mental issues but appeared to be agitated.

The officer obtained defendant's name and date of birth; he conducted a records check of defendant. The officer discovered defendant was on formal, felony probation with search terms and that his driver's license had expired on October 22, 2012. The officer found a vehicle associated with defendant and conducted a record check on it. The vehicle had no license plates and was registered to defendant's mother.

The officer told defendant he could not drive any vehicle because his license was expired; defendant acknowledged that he could not drive until he had his license reinstated. The officer contacted defendant's mother, who agreed to come drive the vehicle home. He advised defendant to wait for his mother, which defendant agreed to do. The officer left.

Five minutes later, the officer received a call advising him that defendant had driven the vehicle away. The officer drove to defendant's mother's home. A few minutes later, defendant pulled into the mobilehome park in his mother's vehicle.

The officer ordered defendant to stop and get out of the car. Defendant yelled: "'Not this time, Cop.'" Defendant backed away and drove off. The officer quickly found the vehicle parked at the south end of the mobilehome park, adjacent to a golf course; defendant was not in the car. The officer saw defendant running down an embankment onto the golf course. He gave chase and ordered defendant to get on the ground. Defendant eventually complied. Defendant physically resisted while the officer

7

attempted to handcuff him. The officer and his partner had to drive their patrol car onto the golf course because defendant refused to walk.

Defendant's counsel argued defendant was suffering from mental health issues and, therefore, should be returned to probation. The People noted, "there has been no evidence of any kind of mental health issues that he suffers from." The court also observed there "really was no evidence during the violation hearing" of mental health issues. The court found defendant had violated the terms of his probation.[6] The court then indicated a tentative decision to impose the suspended sentence but observed "there is some history of some type of either mental or substance abuse disorder[s]." The court continued the matter for sentencing.

On March 23, 2018, defense counsel filed a mitigation letter alleging defendant suffered physical disabilities, including a frontal lobe injury, and posttraumatic stress disorder. Defense counsel attached to the mitigation letter an unsigned letter alleging defendant had been admitted to a hospital on June 18, 2016, "on an involuntary basis for treatment of profound levels of depression with [an] active suicidal plan and intent [*sic*] with the patient also reporting onset of auditory hallucinations." At the hearing on the same date, the court imposed the suspended sentence of three years of imprisonment and awarded defendant 903 days of total custody credits.

---

[6] On the same day, defendant entered a plea to the court in another misdemeanor case and admitted a violation of probation in yet another case.

## II. DISCUSSION

Defendant contends the matter should be conditionally reversed and remanded to the trial court to determine, retroactively, whether defendant qualifies for a pretrial diversion program for individuals diagnosed with qualifying mental disorders pursuant to section 1001.36. The People contend that because section 1001.36 applies only to nonfinal judgments, defendant is not entitled to an evaluation for a pretrial diversion program because his judgment became final after he failed to file a timely appeal from the court's imposition of sentence on August 31, 2015. We agree with defendant.

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines '"pretrial diversion"' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . .'" (*Frahs*, *supra*, 9 Cal.5th at p. 626.)

"[A] trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community." (*Frahs*, *supra*, 9 Cal.5th at pp. 626-627.)

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. [Citation.] The maximum period of diversion is two years. [Citation.] If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. [Citation.] 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.'" (*Frahs*, *supra*, 9 Cal.5th at p. 627.)

*Frahs* found "that section 1001.36 applies retroactively to all cases not yet final on appeal." (*Frahs*, *supra*, 9 Cal.5th at p. 632.) Because the mental health diversion statute came into effect while the defendant's appeal from his conviction was pending, the court concluded "that a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when . . . the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." (*Id.* at p. 640.)

We recognize that the quantum of "evidence" for a qualifying mental health disorder in the instant case falls far short of that adduced in *Frahs*. Nonetheless, the record does contain "evidence" that defendant suffered one or more mental health issues, which should at least entitle him to a hearing where he has the burden of proving entitlement to section 1001.36 relief. We note that had defense counsel been aware of and acting prospectively to demonstrate defendant's qualification for section 1001.36 relief, he may very well have been able to adduce admissible evidence of a qualifying mental health disorder.

Indeed, at the hearing on May 24, 2016, defendant's attorney stated that defendant had been admitted to a hospital on a "on a psychiatric hold." At the hearing on June 9, 2016, defense counsel stated that defendant had been admitted to a hospital for "possibly schizophrenia, for all I know." At the hearing on January 5, 2018, defense counsel argued defendant was suffering from mental health issues and, therefore, should be returned to probation. On March 23, 2018, defense counsel filed a mitigation letter alleging defendant suffered physical disabilities, including a frontal lobe injury and posttraumatic stress disorder. Defense counsel attached to the mitigation letter an unsigned letter alleging defendant had been admitted to a hospital on June 18, 2016, "on an involuntary basis for treatment of profound levels of depression with [an] active suicidal plan and intent [*sic*] with the patient also reporting onset of auditory hallucinations." "This evidence suffices to make a conditional limited remand appropriate here." (*Frahs*, *supra*, 9 Cal.5th at p. 640.)

11

### III. DISPOSITION

The judgment is conditionally reversed and the matter remanded "with the following instructions for the trial court in considering defendant's eligibility for diversion under section 1001.36: 'If the trial court finds that [defendant] suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If [defendant] successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that [defendant] does not meet the criteria under section 1001.36, or if [defendant] does not successfully complete diversion, then his convictions and sentence shall be reinstated.'" (*Frahs*, *supra*, 9 Cal.5th at pp. 640-641.) "We express no view concerning whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible." (*Id*. at p. 641.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER_____
                                           Acting P. J.
We concur:


FIELDS_____
                    J.


RAPHAEL_____
                    J.

12