# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

Plaintiff and Respondent,

v.

OSCAR LOPEZ,

Defendant and Appellant.

S281488

Fourth Appellate District, Division Two

E080032

San Bernardino County Superior Court

FWV1404692

---

January 23, 2025

Justice Liu authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Kruger, Groban, Jenkins, and Evans concurred.

---

PEOPLE v. LOPEZ

S281488


Opinion of the Court by Liu, J.


In the criminal law context, when ameliorative legislation goes into effect, we generally presume the Legislature intends the benefits of the new enactment to apply as broadly as constitutionally permissible to all nonfinal cases. (*In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*).) The focus is on finality because ameliorative enactments can constitutionally apply to any case where the judgment is not yet final. (*Ibid.*) For purposes of *Estrada*, the test for finality is "whether the criminal prosecution or proceeding *as a whole* is complete." (*People v. Esquivel* (2021) 11 Cal.5th 671, 679, italics added (*Esquivel*).) The meaning of finality in the *Estrada* context is distinct from the issue of whether a judgment is final for purposes of appealability. (*Esquivel*, at p. 679.)

The issue here is whether a judgment, or part of it, becomes final for *Estrada* purposes based on an appellate court's affirmance of a conviction, while sentencing issues remain pending before the superior court following remand. The answer is no. A criminal case is only reduced to a singular, final judgment following the conclusion of the entire criminal case or prosecution. Thus, a criminal case in which the sentence is not yet final, including one in which an appellate court has affirmed the conviction and remanded for reconsideration of sentencing-related issues, is not final for purposes of *Estrada*, and the benefits of supervening ameliorative legislation apply retroactively.

1

Because the judgment in this case was not final for *Estrada* purposes, Lopez was entitled to the retroactive application of Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333). Accordingly, we reverse the judgment below and remand for further proceedings consistent with this opinion.

**I.**

In October 2014, defendant Oscar Lopez and his passenger Sergio Vidrio stopped their car alongside Nestor M. and Noel A.'s car. Either Lopez or Vidrio asked, "Where are you guys from?" Nestor responded, but Noel was unable to hear what Nestor said. Lopez and Vidrio pulled out guns and fired multiple shots into the victims' car, killing Nestor and injuring Noel.

Following trial, a jury convicted Lopez of first degree murder (Pen. Code, § 187, subd. (a); all undesignated statutory references are to this code), attempted premeditated murder (§§ 664, 187, subd. (a)), shooting at an occupied vehicle (§ 246), and possession of a firearm by a person convicted of a felony (§ 29800, subd. (a)(1)). The jury found true the allegation that Lopez committed the crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), that he personally used a firearm (§ 12022.5, subd. (a)), and that a principal personally and intentionally discharged a firearm causing great bodily injury or death during a crime committed for the benefit of a criminal street gang (§ 12022.53, subds. (c)–(e)(1)). In a bifurcated proceeding, the trial court found Lopez had suffered a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), a prior serious felony conviction (§ 667, subd. (a)(1)), and three

prior prison terms (§ 667.5, subd. (b)). The trial court sentenced Lopez to a total prison term of 141 years to life. Lopez appealed.

On appeal, the Court of Appeal modified the sentence and conditionally reversed. It then remanded the matter to the trial court for further sentencing pursuant to Senate Bill Nos. 620 (2017–2018 Reg. Sess.) and 1393 (2017–2018 Reg. Sess.), which expanded the trial court's authority to strike or dismiss certain enhancements in the furtherance of justice under section 1385. The disposition read: " 'The judgment as thus modified is conditionally reversed. On remand, the trial court shall consider whether to strike . . . the prior serious felony conviction enhancement[] or any of the firearm enhancements. If it does so . . . , it must resentence . . . defendant. Otherwise, it must reinstate the modified judgment.' " (*People v. Lopez* (2023) 93 Cal.App.5th 1110, 1113, 1115 (*Lopez*).)

While Lopez was awaiting resentencing in the trial court, the Legislature enacted Assembly Bill 333. (*Lopez, supra*, 93 Cal.App.5th at p. 1114.) As explained further below, Assembly Bill 333 added new elements to the substantive offense and enhancements in the gang statute, and its substantive changes apply retroactively to all nonfinal cases under *Estrada*. (*People v. Tran* (2022) 13 Cal.5th 1169, 1207 (*Tran*).)

On October 13, 2022, the trial court held a resentencing hearing and declined to apply Assembly Bill 333 retroactively to Lopez's case on the ground that his conviction was final. (*Lopez, supra*, 93 Cal.App.5th at pp. 1113, 1115.) The court then resentenced Lopez to 101 years to life. (*Id.* at p. 1113.) Lopez appealed.

Following Lopez's second appeal, the Court of Appeal held that Lopez's judgment was nonfinal for purposes of *Estrada* but that the superior court had no jurisdiction to readjudicate the gang enhancements based on the terms of the remittitur. (*Lopez*, *supra*, 93 Cal.App.5th at pp. 1119–1120.) Thus, it concluded that the superior court lacked jurisdiction to apply Assembly Bill 333 at Lopez's resentencing hearing. Justice Raphael dissented, concluding in light of *Estrada* that the matter should have been remanded for the trial court to apply Assembly Bill 333 because the judgment in Lopez's case was not yet final. (*Lopez*, at pp. 1121–1123 (dis. opn. of Raphael, J.).)

We granted review to decide whether a defendant is entitled to retroactive application of Assembly Bill 333 where an appellate court has affirmed the underlying conviction but sentencing issues remain pending.

## II.

"When the Legislature amends a statute so as to lessen the punishment[,] it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory [statute] imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of

penology." (*Estrada, supra,* 63 Cal.2d at p. 745; accord, *Esquivel, supra,* 11 Cal.5th at p. 675.) *Estrada* applies to statutory amendments "which redefine, to the benefit of defendants, conduct subject to criminal sanctions." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 301.)

In determining whether it is constitutionally permissible for an ameliorative statute to apply retroactively, "[t]he key date is the date of final judgment. If the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then . . . it, and not the old statute in effect when the prohibited act was committed, applies." (*Estrada, supra,* 63 Cal.2d at p. 744.) We presume ameliorative changes to the law "extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 308 (*Lara*).) "[T]he range of judgments affected by *Estrada* is delimited by constitutional constraints." (*People v. Padilla* (2022) 13 Cal.5th 152, 160 (*Padilla*).)

The *Estrada* finality "inquiry focuse[s] on whether the criminal prosecution or proceeding *as a whole* is complete" (*Esquivel, supra,* 11 Cal.5th at p. 679, italics added) — "i.e., when ' "the last word of the judicial department with regard to a particular case or controversy" ' has issued." (*Padilla, supra,* 13 Cal.5th at p. 161, quoting *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211, 227.) "[A] judgment becomes final ' "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari ha[s] elapsed." ' " (*Padilla,* at p. 162; see *id.* at pp. 161–162 [a judgment that was final at one point can become nonfinal when reopened].) Notably, "an order that left unresolved whether the

court would modify its judgment," including an order involving a defendant's sentence, can reset the clock governing the filing of certiorari petitions. (*Hibbs v. Winn* (2004) 542 U.S. 88, 98; see *ibid.* ["a genuinely final judgment is critical under" 28 U.S.C. § 2101(c)].) A case is final when "the courts can no longer provide a remedy to a defendant on direct review." (*In re Spencer* (1965) 63 Cal.2d 400, 405.) For *Estrada* purposes, the "judgment" means the " 'judgment of conviction' " and the sentence. (*People v. McKenzie* (2020) 9 Cal.5th 40, 46 (*McKenzie*).)

In 2021, the Legislature passed Assembly Bill 333, enacting the STEP Forward Act of 2021. (Stats. 2021, ch. 699, § 1.) "Assembly Bill 333 made the following changes to the law on gang enhancements: First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.) Third, Assembly Bill 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently

charged offense. (§ 186.22, subd. (e)(1), (2).) Fourth, Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).)" (*Tran*, *supra*, 13 Cal.5th at p. 1206.) These substantive changes to section 186.22 apply retroactively under the rule of *Estrada*. (*Tran*, at pp. 1206–1207.) Lopez asserts that under Assembly Bill 333, the evidence was insufficient to support the gang enhancement.

## III.

As an initial matter, both parties agree the Court of Appeal was incorrect in concluding Assembly Bill 333 cannot be applied retroactively to Lopez's case due to the superior court's limited jurisdiction as defined by the remittitur. The scope of the superior court's jurisdiction as defined by a remittitur does not prevent the retroactive application of ameliorative laws. As the Attorney General notes, the Court of Appeal itself was not subject to the jurisdictional limitations of the remittitur. (See *People v. Hargis* (2019) 33 Cal.App.5th 199, 208 ["even if the trial court properly concluded it lacked jurisdiction to entertain the motion, the Proposition 57 issue has now been brought before us"]; *People v. Mitchell* (2023) 97 Cal.App.5th 1127, 1144, fn. 2 (conc. opn. of Poochigian, J.) (*Mitchell*) ["while the trial court, bound by the terms of the prior remittitur, lacked authority to vacate the convictions, the Court of Appeal was not so restricted and could have itself reversed the convictions in the *Lopez* decision"].) Thus, the superior court's jurisdiction as set forth in a remittitur does not determine whether an ameliorative law applies retroactively.

Nevertheless, the Attorney General maintains Lopez is not entitled to the ameliorative application of Assembly Bill 333 due to finality. But our precedent makes clear Lopez's judgment was not final for purposes of *Estrada* when Assembly Bill 333 became effective.

Assembly Bill 333 took effect on January 1, 2022, before Lopez exhausted his remedies on direct appeal. At that point, the criminal proceeding was pending before the superior court following the Court of Appeal's vacatur of sentence and remand for resentencing. The " 'criminal proceeding . . . ha[d] not yet reached final disposition in the highest court authorized to review it.' " (*People v. Rossi* (1976) 18 Cal.3d 295, 304, quoting *Bell v. Maryland* (1964) 378 U.S. 226, 230; accord, *McKenzie*, *supra*, 9 Cal.5th at p. 46.) We need not delineate the constitutional parameters of " 'the Legislature's power to intervene in judicial decisionmaking.' " (*Padilla*, *supra*, 13 Cal.5th at p. 161.) Here, it suffices to say that there is no " 'constitutional obstacle' " (*id.* at p. 162) to requiring retroactive application of ameliorative laws where a criminal conviction has been affirmed on direct appeal but sentencing issues remain pending on remand before the superior court. Accordingly, and as we presume the Legislature intended, Lopez was entitled to the benefit of Assembly Bill 333. (See *McKenzie*, *supra*, 9 Cal.5th at p. 46; *Esquivel*, *supra*, 11 Cal.5th at p. 676 ["A defendant who is convicted and sentenced to a term of imprisonment . . . is presumptively entitled to the benefit of ameliorative legislation that takes effect before direct review is complete."].)

The Attorney General acknowledges Lopez's sentence was not final when Assembly Bill 333 went into effect. However, he maintains that *part* of Lopez's judgment — his judgment of

conviction — was final. The Attorney General posits that Lopez's gang enhancement "was affirmed and final on direct appeal at the time the new legislation went into effect." The Attorney General asserts that applying Assembly Bill 333 under these circumstances would amount to relitigating guilt where the "guilt determination" is final.

"In criminal actions, the terms 'judgment' and ' "sentence" ' are generally considered 'synonymous' [citation], and there is no 'judgment of conviction' without a sentence." (*McKenzie, supra*, 9 Cal.5th at p. 46.) Thus, when any aspect of a case is on appeal from sentencing, the "case" or "prosecution" has not been reduced to final judgment for *Estrada* purposes. (See *ibid.*) Because Lopez had not yet exhausted his direct appeal, Lopez's case had not been reduced to a final judgment for *Estrada* purposes.

In arguing that a judgment can have final and nonfinal parts for *Estrada* purposes, the Attorney General relies on *People v. Wilson* (2023) 14 Cal.5th 839, *People v. Jackson* (1967) 67 Cal.2d 96 (*Jackson*), and *Padilla, supra*, 13 Cal.5th 152. In *Wilson*, Wilson sought retroactive application of an ameliorative law — section 1172.6, subdivision (g) — to his capital case. We considered whether Wilson could use that procedural mechanism to challenge the validity of his murder conviction on direct appeal when that mechanism is only available to individuals whose "conviction is not final." (§ 1172.6, subd. (g); see *id.*, subds. (a)–(f) [postconviction procedural mechanism].) We observed Wilson's case involved a complicated procedural posture: although Wilson's judgment following a penalty retrial was pending on direct appeal, we had affirmed Wilson's murder conviction nearly 15 years before in his first appeal. (*Wilson, supra*, 14 Cal.5th at p. 870.) While we surmised Wilson's

murder conviction "appear[ed] to have become final" with our prior affirmance of his murder conviction (*ibid*.), we declined to resolve the issue and applied section 1172.6, subdivision (g) to Wilson's case. (*Wilson*, at p. 871.) *Wilson* addressed the meaning of a final "conviction" as provided in section 1172.6 rather than the meaning of finality for purposes of *Estrada*. *Wilson* did not reach the issue presented here.

In *Jackson*, this court relied on a unique feature of death penalty cases — i.e., bifurcated guilt and death verdicts — to apply an intervening decision, *Escobedo v. Illinois* (1964) 38 U.S. 478, to the defendant's reopened penalty verdict while refraining from applying the same decision to his unopened guilt verdict. (*Jackson*, *supra*, 67 Cal.2d at p. 99 ["The scope of this [penalty] retrial is a matter of state procedure under which *the original judgment on the issue of guilt remains final* during the retrial of the penalty issue and during all appellate proceedings reviewing the trial court's decision on that issue."], italics added.) *Jackson* did not involve an interpretation of *Estrada*, it predated *Padilla*, it arose on habeas, and it concerned the reopening of a penalty judgment in the distinct context of a bifurcated capital proceeding. Because *Jackson* involved a context distinguishable in multiple ways from the instant case, it does not provide useful guidance on the issue presented here.

In *Padilla*, we considered the retroactive effect of Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Cal. Const., art. I, § 32), which reformed the process by which juvenile offenders could be transferred to the jurisdiction of the criminal court. We addressed the *Estrada* presumption in the context of a judgment that became nonfinal after Padilla's "sentence was vacated on habeas corpus and the case was returned to the trial court for imposition of a new sentence."

(*Padilla, supra,* 13 Cal.5th at p. 158.)  We held there is no distinction for *Estrada* purposes "between cases that are nonfinal because the defendant is undergoing retrial or resentencing and those in a newly coined procedural stance — cases 'not yet final on initial review.' " (*Padilla,* at p. 162.)  A defendant whose sentence is vacated " 'regain[s] the right to appeal whatever new sentence was imposed[,]' " and the judgment becomes nonfinal.  (*Id.* at p. 177.)

In holding Padilla was entitled to a transfer hearing, we addressed the Attorney General's concern that retroactive application of Proposition 57's transfer hearing provision could result in the relitigation of a juvenile defendant's guilt.  In explaining the impact of our holding, we noted that "the right and remedy we recognize today does not allow Padilla to raise claims unrelated to his sentence." (*Padilla, supra,* 13 Cal.5th at p. 169.)  In referring to the scope of the proceedings that were reopened through his habeas corpus petition, we described Padilla's punishment as the "the nonfinal part of his judgment." (*Id.* at p. 170.)  We used the phrase "nonfinal part" to distinguish the portion of Padilla's judgment that remained undisrupted by the retroactive application of the ameliorative law (Proposition 57).  *Padilla* did not create bifurcated judgments or otherwise alter the premise that " 'judgment of conviction' " and "sentence" are understood generally as synonymous in criminal actions. (*McKenzie, supra,* 9 Cal.5th at p. 46.)  Nor did it change the principle that, for purposes of *Estrada,* "[t]he cutoff point for application of ameliorative amendments is the date when the entire case or prosecution is reduced to a final judgment." (*Mitchell, supra,* 97 Cal.App.5th at p. 1139, citing *McKenzie,* at p. 46.)

The Attorney General further contends that the retroactive application of Assembly Bill 333 will burden courts by requiring the "relitigation" of the gang enhancements. But Lopez is entitled to retroactive application of Assembly Bill 333 to litigate the gang enhancements as provided under the current law in the first instance. And while the Attorney General raises practical concerns, he does not identify any constitutional obstacles to the retroactive application of Assembly Bill 333. (See *McKenzie, supra*, 9 Cal.5th at p. 48 ["the People offer[ed] no basis for concluding that the [ameliorative legislation] may not 'be applied constitutionally' to [the] defendant"]; *Padilla, supra*, 13 Cal.5th at pp. 167–168 ["we do not doubt that 'the appropriate remedy can be somewhat complex' when new laws are applied retroactively in the juvenile context because of the consequences for those proceedings of the passage of time" but *Lara, supra*, 4 Cal.5th at page 304 "considered those complexities and determined they do not bar retroactive application of Proposition 57 to nonfinal cases"].) In light of *Estrada*, we presume the Legislature was aware that retroactive application of Assembly Bill 333 would result in the retrial of gang offenses and enhancements. If the Legislature wished to avoid such retrials, it could have "provide[d] for a different or more limited form of retroactivity, or for no retroactivity at all." (*Padilla*, at p. 162.)

Relatedly, the Attorney General argues the Legislature could have explicitly stated Assembly Bill 333's substantive changes apply retroactively to this circumstance and chose not to. We have rejected this line of reasoning before. "Relying on legislative silence to infer an intent to limit the retroactive application of ameliorative laws would invert *Estrada*'s basic principle that we presume from legislative silence an intent to

apply new laws as broadly as constitutional boundaries permit." (*Padilla*, *supra*, 13 Cal.5th at p. 169.)

In sum, Lopez's case "does not come near whatever limits there may be on the power of lawmakers to impose their commands retroactively." (*Padilla*, *supra*, 13 Cal.5th at p. 161.) Because *Estrada* requires ameliorative legislation to be applied as broadly as constitutionally permissible, and because Lopez's judgment was not reduced to a final disposition, his case is not final for purposes of *Estrada*. Accordingly, he is entitled to retroactive application of Assembly Bill 333's substantive changes.

In so holding, we clarify that the superior court had jurisdiction to provide relief under applicable ameliorative laws, such as Assembly Bill 333, after the case was conditionally reversed and remanded to correct a sentencing error. Here, the Court of Appeal determined the superior court did not have jurisdiction to apply Assembly Bill 333 when the matter was before it on remand to address sentencing issues. (See also *Mitchell*, *supra*, 97 Cal.App.5th at p. 1144, fn. 2 (conc. opn. of Poochigian, J.).) But the superior court's jurisdiction as set forth in a remittitur does not determine whether an ameliorative law applies retroactively. It would tax judicial resources to require defendants like Lopez to take a second appeal to secure a second remand to the superior court in order to obtain any relief to which they may be entitled.

## CONCLUSION

We reverse the judgment below and remand for further proceedings consistent with this opinion. On remand, Lopez may renew his arguments that he is entitled to resentencing under Senate Bill Nos. 567 (2021–2022 Reg. Sess.) and 81

(2021–2022 Reg. Sess.) in light of our recent decisions in *People v. Lynch* (2024) 16 Cal.5th 730 and *People v. Walker* (2024) 16 Cal.5th 1024.

**LIU, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Lopez

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 93 Cal.App.5th 1110
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S281488
**Date Filed:** January 23, 2025

_____

**Court:**  Superior
**County:**  San Bernardino
**Judge:**  Bridgid M. McCann

_____

**Counsel:**

Rachel Varnell, under appointment by the Supreme Court, for Defendant and Appellant.

Arlene Speiser, Kathleen Guneratne; Martin F. Schwarz, Public Defender (Orange), Laura Jose, Chief Public Defender, and Adam Vining, Deputy Public Defender, for the California Public Defender's Association and the Orange County Public Defender's Office as Amici Curiae on behalf of Defendant and Appellant.

Brad Kaiserman for California Appellate Defense Counsel as Amicus Curiae on behalf of Defendant and Appellant.

Galit Lipa, State Public Defender, and Laura Kelly, Deputy State Public Defender, for the Office of the State Public Defender as Amicus Curiae on behalf of Defendant and Appellant.

Sanger Law Firm, Sarah S. Sanger; and Markéta Sims, Deputy Alternate Public Defender (Orange), for California Attorneys for

Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christine Y. Friedman, Melissa A. Mandel, Warren J. Williams and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Rachel Varnell
Attorney at Law
P.O. Box 799
Los Gatos, CA 95031
(650) 483-4248

Joseph C. Anagnos
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9010