Filed 12/3/21  P. v. Bunge CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NIKOLAI ETTORE BUNGE,<br><br>Defendant and Appellant. | C092866<br><br>(Super. Ct. No. P16CRF0270) |

During the third year of his five-year probationary term, defendant Nikolai Ettore Bunge violated his probation.  As a result, the trial court revoked defendant's probation and sentenced him to four years in prison.  On appeal, defendant argues that he is entitled to the retroactive application of Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950), which he contends retroactively modifies his probation term to end before his 2020 probation violations, requiring the court to strike those violations and vacate his consequent prison sentence.  In the event we reject defendant's proposed application of Assembly Bill 1950, defendant argues, and the People concede, that the

1

trial court failed to stay his two-year concurrent term for possession of a firearm pursuant to Penal Code section 654 (unspecified statutory section citations that follow are to the Penal Code).

For the reasons that follow, we hold that Assembly Bill 1950 does not apply to defendant. However, we agree with the parties that the trial court erred when it failed to apply section 654 to his sentence for possession of a firearm by a felon. We correct the sentencing error and affirm the judgment as modified.

## FACTS AND HISTORY OF THE PROCEEDINGS

A California Highway Patrol officer stopped defendant for driving a vehicle with no front license plate. While defendant looked for his license in the car, the officer saw a loaded, sawed off shotgun with an attached bandolier protruding from beneath an article of clothing. The bandolier was filled with several additional rounds of ammunition. Defendant got out of the vehicle and admitted that he owned everything in the vehicle, was on probation for possession of methamphetamine, and had methamphetamine in his pocket. The officer found a rock of methamphetamine in defendant's pocket, as well as additional gun parts in the car.

In January 2017, defendant pleaded no contest to possession of a controlled substance while armed with a firearm, possession of a firearm by a felon, and possession of a deadly weapon. In April 2017, the trial court suspended imposition of his sentence and placed him on five years felony probation.

In August 2020, at a contested probation violation hearing, the trial court found that on July 16, 2020, defendant violated the conditions of his probation by possessing methamphetamine (Health & Saf. Code, § 11377) and driving without a license (Veh. Code, § 14601.1, subd. (a)). In October 2020, the trial court terminated defendant's probation and sentenced him to four years in prison, comprised of four years for possession of a controlled substance with a firearm, two years concurrent for felon in

2

possession of a firearm, and two years, stayed pursuant to section 654, for possession of a deadly weapon. Defendant filed a timely notice of appeal.

DISCUSSION

I

*Assembly Bill 1950*

Defendant argues that because his case is not final, he is entitled to the retroactive application of Assembly Bill 1950, which would reduce his probationary term to two years, such that he would not have been on probation at the time of his probation violations. Thus, he seeks to have his probation violations stricken and his prison sentence revoked. The People argue that because Assembly Bill 1950 concerns only the length of probationary terms, it does not apply to defendant because he was not on probation at the time Assembly Bill 1950 went into effect.

A.     Legal Background

Effective January 1, 2021, Assembly Bill 1950 amended section 1203.1, subdivision (a) to limit the probation term for felony offenses to two years, except in circumstances not present here. (Assem. Bill 1950; Stats. 2020, ch. 328, § 2; *People v. Lord* (2021) 64 Cal.App.5th 241, 245 (*Lord*).)

Generally, "where [an] amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed," so long as the amended statute takes effect before the judgment of conviction is final. (*In re Estrada* (1965) 63 Cal.2d 740, 748 (*Estrada*).) "This rule rests on an inference that when the Legislature has reduced the punishment for an offense, it has determined the 'former penalty was too severe' [citation] and therefore 'must have intended that the new statute imposing the new lighter penalty . . . should

3

apply to every case to which it constitutionally could apply' [citation]." (*People v. DeHoyos* (2018) 4 Cal.5th 594, 600.)

Appellate courts, including this one, have unanimously found Assembly Bill 1950 retroactively applies to probationers whose cases are not yet final. (*Lord, supra*, 64 Cal.App.5th at p. 246; *People v. Sims* (2021) 59 Cal.App.5th 943, 955-964 (*Sims*); *People v. Quinn* (2021) 59 Cal.App.5th 874, 879-885 (*Quinn*); *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1073-1074; *People v. Burton* (2020) 58 Cal.App.5th Supp. 1, 14-19.) This is because Assembly Bill 1950 is an ameliorative change that decreases punishment: "With certain exceptions, the new law limits the term of probation for a felony conviction to two years. While probation is not considered punishment in the same way incarceration is, it is clear probation is 'a "form of punishment." ' " (*Lord,* at p. 245.)

There is also no saving clause in Assembly Bill 1950 "or other indication the law is to be applied prospectively only." (*Lord, supra*, 64 Cal.App.5th at p. 245.) "On the contrary, the legislative history for Assembly Bill No. 1950 suggests the Legislature harbored strong concerns that probationers—including probationers whose cases are pending on appeal—face unwarranted risks of incarceration due to the lengths of their probation terms." (*Sims, supra*, 59 Cal.App.5th 943 at p. 961.) Committee reports on the bill noted about 20 percent of California prison admissions are the "result of supervised probation violations," and a " 'shorter term of probation, allowing for an increased emphasis on services, should lead to improved outcomes for both people on misdemeanor and felony probation while reducing the number of people on probation returning to incarceration.' " (*Sims,* at p. 962.) This "legislative history demonstrates that the amendment was motivated by concerns that apply to current probationers as much as future ones" and addresses probation being " ' "a pipeline for re-entry into the carceral system." ' " (*People v. Stewart, supra*, 62 Cal.App.5th at p. 1073.)

4

B.    Analysis

Defendant relies principally on *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*) to argue that his criminal judgment was not final when Assembly Bill 1950 went into effect, and thus he is retroactively entitled to its ameliorative benefits.

In *McKenzie*, a trial court placed the defendant on probation and suspended imposition of his sentence. (*McKenzie*, *supra*, 9 Cal.5th at p. 43.) Later, the trial court revoked the defendant's probation and imposed his prison sentence. (*Ibid.*) The defendant argued that he was entitled to the retroactive benefit of an intervening law that changed one of his sentencing enhancements. (*Ibid.*) Our Supreme Court held that *Estrada* retroactively applies to nonfinal judgments, and because defendant's appeal from the order revoking probation and sentencing defendant was still pending at the time the amendment took effect, the defendant's case was not yet final and he could seek retroactive application of the amendment. (*McKinzie,* at p. 46.)

Here, the trial court revoked defendant's probation and imposed a four-year prison sentence in October 2020. Defendant filed a notice of appeal, and on January 1, 2021, while his appeal was pending, Assembly Bill 1950 went into effect. As discussed, Assembly Bill 1950 is retroactively applicable to judgments that are not yet final. Thus, as in *McKenzie*, the change in law (here, Assembly Bill 1950) went into effect while defendant's appeal of his probation revocation and sentence was pending. His judgment is accordingly not final for purposes of *Estrada*.

However, Assembly Bill 1950 does not function to retroactively undo the fact or consequences of defendant's legitimate probation violations. Assembly Bill 1950 does not change the fact that defendant was still on probation in July 2020, when he allegedly violated probation. Even if his probation is retroactively shortened, there is nothing in Assembly Bill 1950 that would retroactively render his alleged violation to not have occurred *during probation*. (See, *Sims, supra*, 59 Cal.App.5th at p. 960 ["Assembly Bill

5

No. 1950 does not guarantee that a probationer will abide by his or her probation conditions and, as a result, avoid imprisonment"].)

We find guidance from our Supreme Court's decision declining to extend Proposition 47 to the bail jumping statute in *People v. Buycks* (2018) 5 Cal.5th 857. Proposition 47, the Safe Neighborhoods and Schools Act (enacted by the electorate Nov. 4, 2014), reclassified some felony theft and drug offenses as misdemeanors. In *Buycks*, the defendant pleaded guilty to felony possession and to felony failure to appear, when he failed to appear in court while on bail for the possession charge. (§ 1320.5 ["[e]very person who is charged with or convicted of the commission of a felony, who is released from custody on bail, and who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony"]; *Buycks*, Cal.5th at p. 891.) On appeal, the defendant argued that because he was entitled to the retroactive application of Proposition 47 to reduce his underlying felony for possession to a misdemeanor, the court must then also reduce his corresponding conviction for felony failure to appear to a misdemeanor. (*Ibid.*) The Supreme Court disagreed, holding that although the defendant was entitled to reduce his drug-offense to a misdemeanor under Proposition 47, "that did not alter the fact that he had been *charged* with a felony when he failed to appear while on bail for that felony charge." (*Buycks*, at p. 892, italics in original.)

Thus, even though Proposition 47 retroactively reduced his drug conviction to a misdemeanor, Proposition 47 did not extend to undo defendant's related, but distinct, wrongful acts prior to Proposition 47 taking effect.

Just as Proposition 47 did not alter the fact that defendant failed to appear on a felony charge at the time, Assembly Bill 1950 does not alter the fact that defendant violated the terms of his probation while on probation. Assembly Bill 1950's reduction of probationary terms does not remove any obligation defendant had to follow the terms of his probation order while it was in effect.

6

This result is consistent with the purpose of Assembly Bill 1950. The legislative history establishes the ameliorative change was to limit the *risk* a probationer will be found in violation by shortening the permissible length of probation, to two years in the case of felonies. (*Sims, supra*, 59 Cal.App.5th at p. 961 [summarizing legislative history as addressing "strong concerns" that probationers "face unwarranted risks of incarceration due to the lengths of their probation terms"].) Indeed, "the amendment of Assembly Bill No. 1950 reflects a categorical determination that a shorter term of probation is sufficient for the purpose of rehabilitation." (*Quinn, supra,* 59 Cal.App.5th at p. 885.) The Legislature did this by modifying section 1203.1, the provision detailing the permissible length of probation.

But this does not allow probationers to avoid actual violations of probation. Assembly Bill 1950 did not modify sections 1203.2 or 1203.3, the provisions dealing with revocation of probation. Applying Assembly Bill 1950 here would do more than just reduce probation and the theoretical risk of violations, as the Legislature intended; it could permit defendants to avoid punishment for conduct that violated terms of probation while they were legitimately on probation.

Absolution for probation violations would undermine the purpose of probation. "The primary goal of probation is to ensure '[t]he safety of the public . . . through the enforcement of court-ordered conditions of probation.' " (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120; § 1202.7.) The legislative history of Assembly Bill 1950 confirms the Legislature recognized the continued importance of enforcing probation conditions. (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.) as amended May 6, 2020, p. 6 ["To the extent that a probationer is not complying with the treatment or counseling directed by the court during a probationary period, the court can revoke the defendant's probation until the defendant is back in compliance"]; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950

7

(2019-2020 Reg. Sess.) June 10, 2020, p. 7 [quoting a statement from a supporter of the bill as saying "this bill does not take the 'teeth' out of probation or the courts"].)

The trial court ordered probation for defendant when he pleaded no contest to possession of a controlled substance while armed with a firearm, possession of a firearm by a felon, and possession of a deadly weapon. Knowing the potential consequences of violating probation, defendant nonetheless committed two misdemeanors, possession of methamphetamine and driving without a license, during probation. The increased culpability for committing illicit acts while on probation, when the state is supervising the defendant's ability to safely remain in society, justifies the additional criminal liability associated with probation violations, independent of the potential for separate criminal charges. Defendant's position would require us to supplant the trial court's role in overseeing adherence to probation conditions and not only retroactively shorten defendant's probation but also absolve him of the consequences associated with violating probation.

To that end, defendant's interpretation would create procedural complications not contemplated by Assembly Bill 1950. As recognized in *Quinn*, typical application of Assembly Bill 1950 retroactively would be a procedurally straightforward process of modifying probation terms to two years, not requiring the trial court "to make a determination regarding dangerousness, the value of further probationary supervision, or any other consideration." (*Quinn, supra*, 59 Cal.App.5th at p. 885.) Applying Assembly Bill 1950 to revoked probations would be a significantly more complex process. At a minimum, this process will include reversing revocations validly made at the time, recalling prison sentences, resentencing defendants as if probation was not violated, and possibly considering the impact of these changes on negotiated pleas. This process would also ignore the severity of the violation, eliminating everything from a single technical violation to multiple violations deriving from severe criminal conduct. And, again, this is a significantly more ameliorative change for defendants than just

8

retroactively shortening a probation term to limit the risk of a future violation. There is no evidence in the text or legislative history of Assembly Bill 1950 indicating this broad reach was the Legislature's intent.

II

*Penal Code section 654*

Defendant next argues that the trial court erred by imposing, rather than staying, his two-year concurrent term for possession of a firearm by a felon under section 654. The People concede the point, and we agree.

Prior to sentencing, defendant did not argue that section 654 applied to his possession of a firearm by a felon conviction. Nor did he object to the consecutive sentence imposed for this conviction. Defendant's claim is nonetheless reviewable on appeal. (*People v. Hester* (2000) 22 Cal.4th 290, 295 ["Ordinarily, a section 654 claim is not waived by failing to object below"].)

Section 654, subdivision (a), prohibits punishing any "act or omission that is punishable in different ways by different" penal provisions. "Whether a defendant may be subjected to multiple punishments under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act— i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives. [Citations.]" (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) "Whether a defendant will be found to have committed a single physical act for purposes of section 654 depends on whether some action the defendant is charged with having taken separately completes the actus reus for

9

each of the relevant criminal offenses." (*Corpening,* at p. 313.) The actus reus is " '[t]he wrongful deed that comprises the *physical components* of a crime.' " (*Id.* at p. 315.)

In situations where section 654 applies, "the accepted 'procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable.' " (*People v. Jones* (2012) 54 Cal.4th 350, 353 (*Jones*).) "In the absence of an explicit ruling by the trial court at sentencing, we infer that the court made the finding appropriate to the sentence it imposed, i.e., either applying section 654 or not applying it." (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1045.) We uphold the trial court's determination regarding the applicability of section 654 on appeal if it is supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

In *People v. Williams* (2009) 170 Cal.App.4th 587 (*Williams*), the trial court found that the conduct underlying the defendant's convictions for possession of a controlled substance while armed and possession of a firearm by a felon "involved the same act and intent," but imposed a concurrent term on the possession of a firearm by a felon count rather than staying that term under section 654. (*Williams*, at pp. 645–646.) The Court of Appeal reversed, holding that "[t]he trial court . . . erred under section 654 in imposing a concurrent term rather than staying the punishment" on the defendant's possession of a firearm by a felon conviction. (*Id.* at p. 646.) In *Jones*, our Supreme Court held that "a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654." (*Jones, supra*, 54 Cal.4th at p. 357.) In reaching this conclusion, *Jones* explained that the defendant's possession of a single firearm on one particular day completed the actus reus for the three crimes of possession of a firearm by a felon, carrying a readily accessible, concealed, and unregistered firearm, and carrying an unregistered loaded firearm in public. (*Id.* at pp. 352, 359.) Thus, because the three crimes involved the same physical act, section 654 barred multiple punishments. *Jones* cited *Williams* with approval, noting that under *Williams*, "[section] 654 prohibits

multiple punishment for possession of a firearm by a felon and possession of a controlled substance while armed." (*Jones*, at p. 357.)

Here, following *Williams* and *Jones*, we conclude that the trial court's implicit finding that count 1 (possession of a controlled substance while armed) and count 2 (possession of a firearm by a felon) constituted separate physical acts or a divisible course of conduct under section 654 is not supported by substantial evidence. An officer found defendant, a felon, in possession of methamphetamine and a sawed-off shotgun together in his car. He was convicted of each crime due to being caught with the firearm and methamphetamine in the car, not due to any antecedent possession of the firearm. Further, the complaint alleged that defendant unlawfully possessed the same shotgun on the same date as the basis for counts 1 and 2. Thus, the record supports only the conclusion that the crimes of possessing a controlled substance while armed with a loaded and operable firearm and possessing a firearm by a felon were part of the same physical act. Section 654, therefore, precludes imposition of an unstayed sentence on defendant's possession of a firearm by a felon conviction. Accordingly, the trial court erred in failing to stay execution of the sentence on that conviction.

## DISPOSITION

Execution of the sentence on defendant's conviction for possession of a firearm by a felon (§ 29800, subd. (a)(1)) is stayed pursuant to section 654. The judgment is affirmed as modified. The trial court shall prepare an amended abstract of judgment to

11

reflect the modified judgment and forward a certified copy to the California Department of Corrections and Rehabilitation.

 

                                       _____

                                               HULL, J.

We concur:

_____

BLEASE, Acting P. J.

_____

KRAUSE, J.